FILED
2014 May-15  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRANDY RENEE COOPER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:13-CV-843-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | |

---

## MEMORANDUM OPINION[1]

### INTRODUCTION

Plaintiff Brandy Renee Cooper brings this action under 42 U.S.C. § 405(g),

Section 205(g) of the Social Security Act. She seeks review of a final adverse

decision of the Commissioner of the Social Security Administration

("Commissioner"), who denied her application for Disability Insurance Benefits

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on May 15, 2014). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Ms. Cooper timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3] For the following reasons, the court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

### STATEMENT OF THE CASE

Ms. Cooper was thirty years old at the time of her latest hearing before an Administrative Law Judge ("ALJ"). *Compare* Tr. 21 *with* Tr. 421. She has completed the seventh grade. Tr. 105. Her past work experience includes employment as a telephone solicitor, waitress, and tax preparer. Tr. 105-06, 126. She claims she became disabled on April 1, 2007, due to fatty liver disease and depression. Tr. 385. Her last period of work ended on March 31, 2007. *Id.*

On February 4, 2008, Ms. Cooper protectively filed a Title II application for a period of disability and DIB. Tr. 325-27. She also protectively filed a Title XVI application for SSI on that date. Tr. 318-24. On May 5, 2008, the Commissioner

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

initially denied these claims. Tr. 142. Ms. Cooper timely filed a written request for a hearing on June 10, 2008. *Id.* The ALJ conducted a hearing on the matter on April, 22, 2010. *Id.* On May 27, 2010, he issued his opinion concluding Ms. Cooper was not disabled and denying her benefits. Tr. 162.

She timely petitioned the Appeals Council to review the decision on June 16, 2010. Tr. 56. On March 7, 2011, the Appeals Council granted review, vacated the hearing decision, and remanded the case to a new ALJ for resolution of certain issues. Tr. 169-71. On remand, a new ALJ conducted a supplemental hearing on August 16, 2011. Tr. 21. On October 26, 2011, the new ALJ issued a decision finding Ms. Cooper not disabled. Tr. 35. She petitioned the Appeals Council to review that decision on November 9, 2011. Tr. 15. On March 4, 2013, the Appeals Council issued a denial of review. Tr. 1.

Ms. Cooper filed a Complaint with this court on May 3, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 9, 2013. Doc. 6. Ms. Cooper filed a supporting brief (doc. 9) on September 12, 2013, and the Commissioner responded with her own (doc. 10) on October 23, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

### ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.  Ms. Cooper met the insured status requirements of the Social Security Act through September 30, 2010.

2.  She had not engaged in substantial gainful activity since April 1, 2007, the alleged disability onset date.

3.  She had the following severe impairments: diabetes mellitus, history of fatty liver disease with gallbladder sludge, major depressive disorder, posttraumatic stress, anxiety, insomnia, borderline intellectual functioning, and headaches.

4.  She did not have an impairment or combination of impairments that met

6

or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    She had the residual functioning capacity ("RFC") to perform light work except she could lift and carry twenty pounds occasionally and ten pounds frequently. She could stand/walk six hours in an eight-hour day and sit eight hours in an eight-hour day. She could understand, remember, and carry out short, simple instructions. She could remember locations and work-like procedures and could maintain attention and concentration sufficiently to complete simple one to two step tasks for periods of at least two hours, without supervision or extra rest periods in order to complete an eight-hour workday. She could maintain occasional contact with co-workers, but no contact with the general public.

6.    She was unable to perform any past relevant work.

7.    She was born on [date redacted], and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability date.

8.    She had at least a high school education and was able to communicate in English.

9.    Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not s/he had transferable job skills.

10.    Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.    Ms. Cooper had not been under a disability, as defined in the Social Security Act, from April 1, 2007, through the date of this decision.

Tr. 24-35.

DISCUSSION

## I.   The ALJ Did Not Properly Assess Ms. Cooper's Updated Medical Opinion Evidence.

In its Remand Order, the Appeals Council faulted two aspects of the first ALJ decision. The Council found that Ms. Cooper did not receive a "full and fair hearing" because the ALJ improperly went off-record for 34 minutes to discuss the case with the vocational expert without Ms. Cooper or her counsel present. Tr. 169. The Council also concluded that the ALJ did not sufficiently justify his RFC determination because the analysis did not adequately reflect limitations imposed by Ms. Cooper's major depressive disorder. Tr. 170. Accordingly, the Council instructed the ALJ on remand to – among other actions – "obtain, if available, updated medical evidence from the claimant's treating sources." *Id.*

The ALJ did so. The Council issued its Order on March 7, 2011. Tr. 171. The ALJ conducted her supplemental hearing on August 16, 2011, and issued her decision October 26 of that year. Tr. 21, 35. The record reflects that, before rendering her decision, the ALJ had secured the office records relating to Ms. Cooper's treatment with the Eastside Mental Health Center in Birmingham, AL. Tr. 740-63. These records concerned several therapeutic sessions Ms. Cooper had with various mental health professionals at the Center between June 6, 2011, and July 19, 2011. *Id.* These

records apparently constitute the only evidence of record evaluating Ms. Cooper's mental health after the Remand Order.

Two aspects of this evidence are material to the court's determination here. On June 6, 2011, Ronald Kendall, MSW, LCSW, of the Center completed an intake evaluation form regarding Ms. Cooper. Tr. 757-62. In that form, Mr. Kendall diagnosed Ms. Cooper with a Global Assessment of Functioning (GAF)[5] Score of 50. Tr. 761. According to the DSM-IV, a GAF of 50 indicates either (1) "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or (2) "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000); *accord Davis v. Astrue*, 287 F. App'x 748, 758 (11th Cir. 2008) (unpublished) (per curiam) ("[A] GAF of 50 indicates either serious symptoms or serious impairments in social, occupational, or school functioning."); *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (unpublished) (per curiam) ("[T]he ALJ erred when he labeled McCloud's 1998 GAF score [of 45] as reflective of moderate symptoms. In fact, a GAF score of 41–50

---

[5] The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

indicates severe impairments."). Then, on July 19, 2011, Mary Barr – a licensed therapist at the Center – confirmed this diagnosis. She also assigned Ms. Cooper a GAF score of 50. Tr. 753.

In her opinion, the ALJ did not reference these dire diagnoses of Ms. Cooper's functional abilities. In fact, the ALJ only mentioned this evidence – at all – once in the opinion. When justifying her assessment of Ms. Cooper's RFC, the ALJ cited Ms. Barr's relatively mild evaluation of Ms. Cooper's anxiety, sadness, sleep, energy, and irritability after their July 19, 2011, session. Tr. 31 (citing Tr. 741). The ALJ also cited Ms. Barr's observation that Ms. Cooper was not (then) having any problems with her panic attacks and concentration. *Id.* The ALJ deployed these observations to reinforce her conclusion that Ms. Cooper had only mild to moderate limitations in her basic mental health abilities. *Id.* However, the ALJ completely overlooked the GAF scores that were assigned to Ms. Cooper during her treatment at the Eastside Mental Health Center in the summer of 2011.

This was reversible error. An ALJ is of course free to discredit a given claimant's GAF score. He or she must, however, tailor their reasoning for doing so to facts specific to that claimant – that is, with references to the claimant's appearance, activities, medical history, or other parts of the case record. *See Davis*, 287 F. App'x at 758; *McLoud*, 166 F. App'x at 418. The law does not permit an ALJ

10

to disregard a GAF score without at least such a minimal, case-specific explanation. This is particularly the case where, as here, the score suggests serious mental illness, and the Appeals Council <u>explicitly</u> highlighted its concern over the limitations imposed by Ms. Cooper's psychological impairments.

The Eleventh Circuit's decisions in *Davis* and *McCloud* reinforce this conclusion. In *Davis*, the claimant's treating psychiatrist had given her a GAF score of 50 on several occasions. 287 F. App'x at 750-51. The ALJ decided to give this opinion "no weight" because the physician's treatment of the claimant was "sporadic" and because he found the score inconsistent with the physician's own treatment notes. *Id.* The Eleventh Circuit decided that that the ALJ's conclusion was unsupported by substantial evidence for a few reasons. First, it determined that the ALJ had misread the physician's treatment notes. *Id.* at 758. Second, as noted above, the court observed that "a GAF of 50 indicates either serious symptoms or serious impairments in social, occupational, or school functioning." *Id.* Because of this fact, it was not all that inconsistent for the claimant's psychiatrist to track her improvements while maintaining her GAF score at 50. *Id.* The court reversed the ALJ's decision for this reason.[6]

---

[6] The court also reversed the ALJ's decision because it found that he had inappropriately discredited the claimant's subjective complaints of pain. *Id.* at 759-62.

11

*McCloud* is perhaps even more germane to this case. There, the claimant had entered a hospital to undergo treatment for depression, alcohol abuse, and post-traumatic stress disorder. 166 F. App'x at 413. At intake, the staff assigned her a GAF of 30 for "poor insight and suicidal ideation." *Id.* By the time of her discharge a week later, however, her score was 45. *Id.* In reviewing this evidence, the ALJ noted the improvement and concluded that the score of 45 was only "moderate." *Id.* at 415. The Eleventh Circuit reversed on several grounds, one of which was that the ALJ had erred in his characterization of the claimant's GAF score:

> [T]he ALJ erred when he labeled McCloud's 1998 GAF score as reflective of moderate symptoms. In fact, a GAF score of 41–50 indicates severe impairments . . . We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score.

*Id.* at 418.

Both of these decisions were unpublished and therefore do not control the court's determination here. And, of course, neither case's facts precisely conform to the instant one. In both cases, however, the claimant (ultimately) had a GAF score in the 41-50 range. And, in both cases, the Eleventh Circuit concluded that – <u>at the very least</u> – the ALJ had to:

• address the claimant's GAF score;

- •     properly characterize the score under the DSM-IV; and

- •     assign some weight designation to it (even if it were "no weight").

This court is persuaded that these are the minimal obligations that an ALJ in this Circuit must satisfy when confronting a claimant's assigned GAF score – at least when the score is as dire as it was here (and as it was in *Davis* and *McCloud*).

The Appeals Council in this case gave the ALJ on remand an ultimatum: she must obtain updated treatment evidence concerning Ms. Cooper's condition. The Appeals Council particularly highlighted Ms. Cooper's major depressive disorder and the possible effect this condition placed on her RFC. The ALJ did secure updated evidence – but treated it only minimally. She did not formally appraise the opinions included in this evidence, including – most importantly – the drastic GAF scores Ms. Cooper earned on more than one occasion. Given the severity of these scores, the ALJ should have at least assigned the scores a weight designation that reflected her consideration of the evidence before her. Because she did not, her decision must be reversed and remanded.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed

and remanded by separate order.

**DONE** and **ORDERED** this the 15th day of May, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge